IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ARMANDO DUCOSQUIER SUAREZ,

      Petitioner,

v.                                                                                    No. 2:26-cv-01541-DHU-JHR

DORA CASTRO, in her official capacity as Warden
of the Otero County Processing Center; MARY DE
ANDA-YBARRA, in her official capacity as Acting
Field Office Director of the ICE New Mexico Field
Office of Enforcement and Removal Operations, U.S.
Immigration and Customs Enforcement, U.S. Department
of Homeland Security; TODD M. LYONS, in his official
capacity as Acting Director, Immigration and Customs
Enforcement, U.S. Department of Homeland Security;
MARKWAYNE MULLIN, in his official capacity as
Secretary, U.S. Department of Homeland Security; and
TODD BLANCHE, in his official capacity as Attorney
General of the United States,

      Respondents.

## ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS

THIS MATTER is before the Court on Petitioner Armando Ducosquier Suarez's Petition

for Writ of Habeas Corpus ("Habeas Petition"). Doc. 3. Petitioner alleges that he was unlawfully

re-detained by Immigration and Customs Enforcement ("ICE") after previously being released

on his own recognizance, in violation of the Due Process Clause of the Fifth Amendment, as well

as denied the opportunity for a bond hearing, in violation of the Immigration and Nationality Act

("INA"). *Id.* ¶¶ 54-58, 66-70.[1] He asks this Court to order Respondents to release him from

custody or provide him with a bond hearing within seven (7) days. *Id.* at 14. Having considered

---

[1] Petitioner also argues that Respondents have detained him in violation of their own regulations.
*Id.* ¶¶ 59-61. However, because the Court grants Petitioner's Habeas Petition on his Due Process
and INA claims, the Court "decline[s] to address th[is] remaining claim[] of error." *Scott v.
Mullin*, 303 F.3d 1222, 1232 (10th Cir. 2002).

the parties' briefs and the relevant law, the Court **GRANTS** Petitioner Armando Ducosquier

Suarez's Petition for Writ of Habeas Corpus.

## I.
## BACKGROUND

1. Petitioner Armando Ducosquier Suarez is a native and citizen of Cuba who entered the United States without inspection on March 18, 2022. *Id.* ¶¶ 1, 46-47. Since his entry, Petitioner has accrued no criminal history. *Id.* ¶ 52; Doc. 10-2 at 11-13.

2. Shortly after his entry, Petitioner encountered immigration officials and was detained. Doc. 3 ¶ 2.

3. Two days later, Petitioner was issued a Notice to Appear and placed in removal proceedings. *Id.* ¶ 3; Doc. 3-2 at 4-7. His Notice to Appear charged him as a noncitizen present in the United States who had not been admitted or paroled. Doc. 3-2 at 4.

4. That same date, Petitioner was released on an Order of Release on Recognizance. Doc. 3 ¶ 4; Doc. 3-2 at 9, 11. Since his release, Petitioner has complied with all conditions of release, including reporting for hearings or interviews, and notifying the Immigration Court of his present address. Doc. 3 ¶¶ 4-5; Doc. 3-2 at 13-16.

5. Following his release, Petitioner established a life in the United States.

6. On November 1, 2023, Petitioner filed an Application to Register Permanent Residence or Adjust Status with U.S. Citizenship and Immigration Services ("USCIS"). Doc. 3-2 at 24-25.

7. On February 1, 2025, Petitioner's wife filed an Alien Relative Petition on his behalf with USCIS. *Id.* at 21-22.

8. On May 6, 2026, Petitioner was detained by ICE at his scheduled check-in. Doc. 3 ¶ 51; Doc. 3-2 at 19. He was served with an Arrest of Alien Warrant. Doc. 10-3. Petitioner was

not provided with an explanation or notice of any changed circumstances justifying his re-detention. Doc. 3 ¶ 51.[2] He was also not provided with a hearing, including a new custody determination hearing. *Id.*

9. Petitioner was eventually transferred to the Otero County Processing Center in Chaparral, New Mexico, where he remains detained. Doc. 3-2 at 18.

On May 14, 2026, Petitioner filed a Habeas Petition. Doc. 3. In his Petition, Petitioner alleges that his re-detention violates the Due Process Clause and the INA. *Id.* ¶¶ 54-58, 66-70. Petitioner specifically argues that he has a significant liberty interest, that the risk of deprivation in his case is exceptionally high, that the Government's interest in detaining him is minimal, and that the burdens on the Government are also minimal. *Id.* ¶¶ 66-70. Petitioner also argues that his detention is governed by § 8 U.S.C. § 1226(a) and that he is, therefore, entitled to a bond hearing. *Id.* ¶¶ 54-58. He asks this Court to: 1) assume jurisdiction over this matter; 2) order that he not be transferred outside of this District; 3) issue an Order to Show Cause; 4) declare that his detention is unlawful; 5) issue a Writ of Habeas Corpus ordering Respondents to release him from custody or provide him with a bond hearing within seven (7) days; 6) award him attorney fees and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412; and 7) grant him any further relief that this Court deems just and proper. *Id.* at 14.

Also, on May 14, 2026, Petitioner filed a Motion for Temporary Restraining Order ("TRO"). Doc. 4. In the Motion for TRO, Petitioner requests that the Court order Respondents to immediately release him from custody. *Id.* at 11.

---

[2] Petitioner's Record of Deportable/Inadmissible Alien states that Petitioner was re-detained due to "a change of circumstance" and a "national emergency declaration," but does not explain what the change of circumstance is. Doc. 10-2 at 2. The record also contains no evidence that Petitioner was provided any notice or explanation of the change of circumstance or of the national emergency declaration. *See. id.*

The next day, on May 15, 2026, the Court entered an Order to Show Cause ordering Respondents to respond to the Habeas Petition within ten (10) business days. Doc. 7. The Court also entered a Minute Order notifying the parties that the Court intended to rule on the Motion for TRO without hearing, and directing Respondents to respond to the Motion by May 20, 2026, at 4:00 PM (MDT). Doc. 8.

On May 20, 2026, Respondents filed their response to the Habeas Petition. Doc. 10. In their response, Respondents acknowledge that Petitioner is subject to the detention provisions of §§ 1225 or 1226. *Id.* at 1. Respondents' position is that Petitioner is subject to mandatory detention under § 1225(b) based on the plain language of the statute. *Id.* at 2. However, Respondents also acknowledge that this Court reached the opposite conclusion in *Requejo Roman v. Castro*, 816 F.Supp.3d 1267 (D.N.M. 2026). *Id.* Respondents also concede that the facts of this case "are not materially distinguishable [from *Requejo Roman*] for purposes of the Court's decision on the legal issue of which statutory provision authorizes Petitioner's detention." *Id.* They further concede that the legal issues in this case are similar to the issues addressed by this Court in *Vega Uribe v. Noem*, No. 2:25-cv-01139-DHU-KRS, 2026 WL 127621 (D.N.M. Jan. 16, 2026). *Id.* at 2 n. 3. Respondents do not address Petitioner's argument that his re-detention violated his due process rights and ask the Court to do the same. *Id.* at 1 n. 1.

## II.
## LEGAL STANDARDS

Habeas relief is available when a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). Petitioner seeks habeas relief, arguing that he is being unlawfully detained in violation of the Due Process Clause and the INA.

The Fifth Amendment's Due Process Clause prohibits the Government from depriving any person of liberty without due process of law. "Freedom from imprisonment—from government

custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491 (2001). The Due Process Clause's protections extend to all persons in the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693.

**III.**
**DISCUSSION**

**A. Petitioner's Re-Detention Without a Pre-Deprivation Hearing Violated His Due Process Rights**

Petitioner argues that his re-detention violates the Due Process Clause. Doc. 1 ¶¶ 66-70. Courts analyze due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivations of that protected liberty interest accords with the Constitution. *See Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904 (1989).

1. Petitioner Possesses a Protected Liberty Interest

Turning to the first step—whether Petitioner possesses a protected liberty interest—this Court finds that Petitioner has a protected liberty interest in his release from immigration custody. Courts have resolved the issue of whether a conditional release rises to the level of a protected liberty interest by comparing the release in the case to the liberty interest in parole in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593 (1972). *See Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010). Like the parole discussed in *Morrissey*, Petitioner's release from immigration custody enabled him "to do a wide range of things," including to "be with family." 408 U.S. at 482. Indeed, Petitioner was released from immigration custody on his own recognizance in March 2022. Doc. 3 ¶ 4; Doc. 3-2 at 9, 11. He established a life with his spouse, who filed an Alien Relative Petition with USCIS on his behalf. Doc. 3-2 at 21-22.

This Court, and at least one other court in this district, has found that noncitizens acquire a liberty interest once released from immigration detention. *See Garcia Domingo v. Castro*, 806 F.Supp.3d 1246, 1252 (D.N.M. 2025) (Urias, J.) (at the TRO stage, finding that a petitioner released by the Office of Refugee Resettlement demonstrated a substantial likelihood of success on his claim that he possessed a protected liberty interest in release from detention); *Cuya-Priale v. Castro*, No. 2:25-cv-01166-KG-DLM, 2025 WL 3564145, at *2 (D.N.M. Dec. 12, 2025) (Gonzales, C.J.) (at the TRO stage, finding the same for a  petitioner released from detention to seek asylum). Neither Respondents nor the Court can identify any factual distinctions in this case that warrant a different conclusion with respect to this Petitioner's liberty interest.

2.   A Pre-Deprivation Hearing Was Required Before Petitioner Was Re-Detained

Having found that Petitioner possesses a protected liberty interest, the Court next examines what process is necessary to ensure any deprivation of that protected interest accords with the Constitution. To make this determination, the Court considers the three factors outlined in *Mathews v. Eldridge*: 1) "the private interest that will be affected by the official action," 2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335, 96 S.Ct. 893 (1976).

Turning to the first *Mathews* factor, the Court finds that Petitioner has a significant private interest in remaining free from detention after being released from immigration custody. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint— lies at the heart of the liberty that the [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. As mentioned previously, Petitioner was out of immigration custody since March 2022 before

being re-detained by ICE, during which time his interest in release grew stronger as he lived freely and presumably "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. His private interest in freedom from detention is therefore substantial.

With respect to the second *Mathews* factor, the Court also finds that the risk of erroneous deprivation in this case is considerable, particularly here where ICE previously released Petitioner, suddenly claimed "a change in circumstance" and a "national emergency declaration" but failed to identify the change and declaration, and where ICE failed to notify Petitioner of the claimed change and declaration and how such change and declaration justified re-detention. A pre-deprivation hearing would have likely attenuated this risk, but Respondents provided no such hearing to Petitioner before re-detaining him.

Finally, the Court finds that the third *Mathews* factor favors Petitioner as well. Respondents' interest in placing Petitioner in detention absent changed circumstances, i.e., danger or flight risk, is low. Moreover, requiring a pre-deprivation hearing does not undermine the Government's interest in enforcing its immigration laws; it merely ensures its enforcement tactics comport with due process. Further, the effort and costs of providing Petitioner this simple procedural safeguard is minimal.

On balance, the Court finds that under the three *Mathews* factors, Petitioner should have received a pre-deprivation hearing prior to being re-detained.

**B. Petitioner's Ongoing Detention Without a Bond Hearing Is Also Unlawful**

Given the Court's finding that due process requires Petitioner's release, the Court need not make a determination regarding Petitioner's detention authority and entitlement to a bond hearing. However, it is worth noting that this case is not the first to raise this issue in this Court. In fact, as Respondents acknowledge, the Court has already considered the statutory and constitutional issues

raised by Petitioner with regard to 8 U.S.C. §§ 1225 and 1226.[3] *See Requejo Roman*, 816 F.Supp.3d 1267 (D.N.M. 2026); *see also Velasquez Salazar v. Dedos*, 806 F.Supp.3d 1231 (D.N.M. 2025); *Vega Uribe v. Noem*, No. 2:25-cv-01139-DHU-KRS, 2026 WL 127621 (D.N.M. Jan. 16, 2026); *Mendoza Rivas v. Noem*, No. 2:25-cv-01311 -DHU-KK (D.N.M. Feb.3, 2026); *Garcia Sanchez v. Noem*, No. 2:25-cv-01293-DHU-SCY (D.N.M. Feb. 5, 2026); *Chen v. Unknown Warden*, No. 1:26-cv-00125-DHU-JFR (D.N.M. Feb. 19, 2026); *Castellanos Haro v. Noem*, No. 2:26-cv-00175-DHU-LF (D.N.M. Feb. 26, 2026). Because the facts here are not materially different than those that this Court analyzed in previous cases, the Court's conclusion is the same. Petitioner, who entered the United States over four years ago, was arrested inside the United States after entering, and was released on his own recognizance, is properly detained pursuant to 8 U.S.C. § 1226. For a detailed account of the Court's reasoning on this issue, see *Requejo Roman*, 816 F.Supp.3d 1267.

## C. Immediate Release Is the Appropriate Remedy

While Petitioner is entitled to a bond hearing while detained, such a remedy would not adequately address the most concerning violation present in this case—Respondents' initial re-detention of Petitioner without due process of law. *See, e.g.*, *E.A.T.-B. v. Wamsley*, 795 F.Supp.3d 1316, 1324 (W.D. Wash. 2025) ("[A] post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty.").

---

[3] The Court notes that the Second, Sixth and Eleventh Circuit Court of Appeals have analyzed this issue and reached the same conclusion. *See Barbosa da Cunha v. Freden*, -- F.4th--, 2026 WL 1146044 (2nd Cir. 2026); *Lopez-Campos v. Raycraft*, --F.4th--, 2026 WL 1283891 (6th Cir. 2026); *Hernandez Alvarez v. Warden*, -- F.4th--, 2026 WL 1243395 (11th Cir. 2026). The Court also acknowledges that the Fifth Circuit and Eight Circuit Court of Appeals have reached the opposite conclusion. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, --F.4th--, 2026 WL 819258 (8th Cir. 2026). The Tenth Circuit Court of Appeals has not yet addressed the issue.

Several courts analyzing similar facts, including this one, have found that immediate release is the appropriate remedy when the Government's re-detention of someone violates their due process rights. *See, e.g.*, *Wamsley*, 795 F.Supp.3d 1316 (holding that a noncitizen previously released on an order of recognizance had a liberty interest in his continued release, that the *Mathews* factors required a pre-deprivation hearing before any re-detention, and that the appropriate remedy was release); *Valdez v. Joyce*, 803 F.Supp.3d 213 (S.D.N.Y. 2025) (finding the same); *Garcia-Domingo v. Castro*, 806 F.Supp.3d 1246 (at TRO stage, ordering immediate release of petitioner previously released by the Office of Refugee Resettlement and re-detained without a pre-deprivation hearing); *Alfaro Herrera v. Baltazar*, No. 1:25-cv-04014-CNS, 2026 WL 91470 (D. Colo. Jan. 13, 2026) (finding release the appropriate remedy to remedy unlawful re-detention of noncitizen previously determined by the Office of Refugee Resettlement not to be a flight risk or danger); *Faizyan v. Casey*, No. 3:25-cv-02884-RBM-JLB, 2025 WL 3208844 (S.D. Cal. Nov. 17, 2025) (finding, under *Mathews*, that revocation of Petitioner's release on recognizance without an opportunity to be heard deprived him of his due process rights, and ordering his immediate release); *Chipantiza-Sisalema v. Francis*, No. 25 Civ. 5528 (AT), 2025 WL 1927931 (S.D.N.Y. July 13, 2025) (granting noncitizen's request for immediate release when she was re-detained without notice or hearing after previous release on her own recognizance). This Court concludes the same and finds that the only adequate remedy for the due process violation here is Petitioner's immediate release.

**IV.**
**CONCLUSION**

For the reasons stated above, Petitioner's Petition for Writ of Habeas Corpus (Doc. 3) is **GRANTED**.

**IT IS THEREFORE ORDERED** that Respondents release Petitioner within **twenty-four (24) hours** of this Order and subject him to the same terms as his original Order of Release on Recognizance. Unless and until Petitioner's Order of Removal becomes final, Respondents are **RESTRAINED** from re-detaining Petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation hearing, that Petitioner is a danger to the community or a flight risk.

**IT IS FURTHER ORDERED** that the parties submit a joint status report to the Court no later than Friday, May 29, 2026, confirming Petitioner's timely release.

As for Petitioner's request to recover costs of suit and attorney fees, Petitioner may submit an application for such fees and costs within thirty (30) days of this Order pursuant to the EAJA, 28 U.S.C. § 2412. Respondents may respond to Petitioner's application no later than fourteen (14) days after Petitioner's application is filed with this Court.

Finally, because the Court is ruling on Petitioner's Habeas Petition and providing him with relief in this Order, Petitioner's Motion for TRO (Doc. 4) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

_____
HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE